UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENDALEE L. R.,[1] | |
| Petitioner, | Case No. 4:21-cv-00141-DKG |
| v. | **MEMORANDUM DECISION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,[2] | |
| Respondent. | |

## INTRODUCTION

Pending before the Court for consideration is Kendalee L. R.'s Petition for Review of the Respondent's denial of social security benefits, filed on March 25, 2021. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner and dismiss the Petition.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On December 6, 2016, Petitioner filed applications for Title II disability insurance benefits and disabled widow's benefits, claiming disability beginning April 28, 2016. The applications were denied initially and on reconsideration, and a hearing was conducted on October 24, 2018, before Administrative Law Judge (ALJ) Christopher Inama. (AR 35-66.) The ALJ issued an unfavorable decision dated January 15, 2019. (AR 180-192.)

The Appeals Council remanded the case to the ALJ for further evaluation and consideration of the evidence. (AR 199-201.) ALJ Inama held a second hearing on August 26, 2020, during which Petitioner amended her alleged onset date to December 8, 2018. (AR 75.)

After considering testimony from Petitioner and a vocational expert, the ALJ issued a decision dated October 13, 2020, finding Petitioner not disabled. (AR 13-27.) The Appeals Council denied Petitioner's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Petitioner timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

At the time the ALJ issued his written determination, Petitioner was fifty-four years of age. Petitioner is a high school graduate with prior work experience as a probation parole officer and laundry worker. Petitioner claims she is unable to work due to bipolar disorder, anxiety, chronic depression, fibromyalgia, high blood pressure, panic attacks, and post-traumatic stress disorder (PTSD).

## THE ALJ DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential process in determining whether a person is disabled or continues to be disabled within the meaning of the Social Security Act (SSA). *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1594.

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since the alleged onset date. (AR 17.) At step two, the ALJ determined Petitioner suffers from the following medically determinable severe impairments: depression/bipolar related disorder, anxiety/obsessive-compulsive disorder, and PTSD. (AR 17.) The ALJ further concluded Petitioner's left proximal humerus fracture was not a severe impairment and that her fibromyalgia allegation was not a medically determinable impairment. (AR 18-19.) At step three, the ALJ determined that, through the date last insured, Petitioner did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 19.)

The ALJ next found Petitioner retained the Residual Functional Capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations: simple, routine work in a job that requires no more than simple work-related decisions and few workplace changes; low-stress jobs with no high production rate or

MEMORANDUM DECISION AND ORDER - 3

pace work, like an assembly line; occasionally interact with supervisors and co-workers; and occasional public contact. (AR 19-20.)

At step four, the ALJ concluded Petitioner was able to perform her past relevant work as a laundry worker. (AR 25.) Relying upon testimony from the vocational expert, the ALJ alternatively concluded that jobs existed in significant numbers in the national economy that Petitioner can perform given her age, education, work experience, and RFC, such as: hand packager, hand launderer, marker, and cleaner housekeeping. (AR 26-27.) The ALJ therefore determined Petitioner was not disabled from December 8, 2018, through the date of the decision dated October 13, 2020. (AR 26-27.)

## ISSUES FOR REVIEW

1. Whether the ALJ properly considered the medical opinion evidence?

2. Whether the ALJ's RFC determination is supported by substantial evidence?

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a

**MEMORANDUM DECISION AND ORDER - 4**

whole, weighing both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on *post hoc* rationalizations attempting to infer what the ALJ may have concluded. *Id.* at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (citation omitted) ("We recognize harmless error applies in the Social Security context.").

## DISCUSSION

Petitioner contests whether the ALJ properly evaluated the medical opinions of her treating nurse practitioners - Anna Giemza-Palmer and Peggy Young - in formulating the RFC. (Dkt. 20, 22.) Respondent maintains the ALJ properly discounted the opinions of

**MEMORANDUM DECISION AND ORDER - 5**

Giemza-Palmer and Young and reasonably concluded Petitioner was not disabled. (Dkt. 21.) The Court has carefully reviewed the record and finds the ALJ properly considered the opinion evidence and the RFC determination is supported by substantial evidence, for the reasons explained more fully below.

**1.    Medical Opinion Evidence**

**A.    Standard for Evaluating Medical Opinion Evidence**

When assessing a claimant's RFC using the Social Security Administration regulations in effect at the time Petitioner filed her claim, the ALJ considers the opinions of "acceptable medical sources" such as physicians, as well as opinions from "other medical sources." 20 C.F.R. §§ 404.1527(a)(1), 404.1545(a)(3).[3] The applicable regulations classified nurse practitioners – such as Giemza-Palmer and Young – as an "other medical source." 20 C.F.R. § 404.1513(a), (d)(1) (2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Other medical sources are qualified to provide evidence about "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Garrison*, 759 F.3d at 1013–14. In determining whether a claimant is disabled, an ALJ must consider such evidence. *See* 20 C.F.R. § 404.1513 (explaining that evidence may come

---

[3] The regulations governing evaluation of medical opinion evidence were amended effective March 27, 2017. *See* 20 C.F.R. § 404.1520c. For social security claims filed before March 27, 2017, such as Petitioner's claim here, the former regulations apply. *See* 20 C.F.R. §§ 404.1527 (2017). Therefore, the Court will apply the regulations effective between September 3, 2013, and March 26, 2017.

**MEMORANDUM DECISION AND ORDER - 6**

from "other sources" that do not qualify as "acceptable medical sources.").

An ALJ may reject the uncontradicted opinion of a treating or examining physician by giving "clear and convincing" reasons for doing so, or, where an opinion is contradicted, by providing "specific and legitimate" reasons for rejecting the opinion. *Revels*, 874 F.3d at 654. In contrast, the ALJ may discount testimony from "other medical sources" if the ALJ "'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3d at 1111 (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); 20 C.F.R. § 404.1527; SSR 06–03p. Such reasons may include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis*, 236 F.3d at 511–12. An ALJ can meet the requirement to give germane reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### B.   Analysis

#### 1.   Nurse Practitioner Giemza-Palmer

Giemza-Palmer provided mental health treatment to Petitioner beginning in April 2018. On October 17, 2018, Giemza-Palmer completed a mental medical source statement assigning marked and extreme limitations in Petitioner's ability to understand, remember, and carry out instructions due to her anxiety, depressive symptoms, attention deficit, bipolar illness, and PTSD. (AR 809-811.)

On July 27, 2020, Giemza-Palmer authored a second mental impairment

questionnaire concluding Petitioner had no useful ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and was unable to meet competitive standards in the functional abilities of maintaining attention for two hours, responding appropriately to changes in a routine work setting, and dealing with normal stress. (AR 949.) Giemza-Palmer further opined Petitioner was seriously limited in six of the mental abilities to do unskilled work, and in all categories of mental abilities needed to do semiskilled and skilled work. (AR 950.) Giemza-Palmer found Petitioner unable to meet competitive standards in all areas of ability to do particular types of jobs, had marked functional limitations in all of the Paragraph B criteria, and had more than a minimal limitation in her ability to do any basic work activity due to her bipolar disease. (AR 951.)

> The ALJ gave "little weight" to Giemza-Palmer's evaluations, stating:
>
> [M]arked and extreme limitations are not supported in the claimant's treatment during the period at issue or by her ability to live as an independent adult. Thus, the ratings appear to be disproportionate to the medical evidence of record. The record shows the claimant has ongoing difficulties with anxiety and depressive symptoms, but it does not document complete mental debility or inability to do basic tasks. For instance, the claimant drives and shops and completed her functional reports with coherent detail. The check-box opinion lacks adequate discussion or support. The marked/extreme limitations are not consistent with [Giemza-Palmer's] own treatment notes.

(AR 23) (citing AR 807, 955, 958, 975, 983, 990, 995.) For the reasons that follow, the Court finds the ALJ provided germane reasons for discrediting Giemza-Palmer's opinions that are supported by substantial evidence in the record.

**MEMORANDUM DECISION AND ORDER - 8**

### a. Ability to Live Independently and Engage in Basic Tasks

The ALJ did not err in concluding Giemza-Palmer's opinions about Petitioner's mental limitations conflict with Petitioner's ability to live as an independent adult and to engage in basic tasks such as driving, shopping, and completing her functional reports. Inconsistencies between an "other medical source" opinion and a claimant's daily activities is a germane reason for the ALJ to discount the opinion. *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam); *Ghanim*, 763 F.3d at 1162.

Substantial evidence supports the ALJ's conclusion that there is an inconsistency between the Giemza-Palmer's opinions and Petitioner's daily activities. Although Petitioner relies on family members to assist with certain daily needs, Petitioner is able to perform basic daily tasks such as driving, shopping, and filling out her functional reports coherently. These activities, the ALJ found, "establish the claimant maintained some capacity for work-related functioning." (AR 21.)[4] While a claimant need not be completely incapacitated to receive benefits, *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996), here, substantial evidence supports the ALJ's conclusion that Petitioner's daily activities and ability to live independently conflict with Giemza-Palmer's opinions that Petitioner had marked and extreme functional mental limitations. For instance, Petitioner's ability to complete her functional reports with coherent detail demonstrates she retains the ability to perform work-related tasks. Similarly, Petitioner's ability to

---

[4] Notably, Petitioner does not contest the ALJ's decision giving little weight to Petitioner's symptom statements and the lay witness statements of Petitioner's mother.

**MEMORANDUM DECISION AND ORDER - 9**

grocery shop demonstrates she is able to interact with others. Accordingly, the Court finds this was a germane reason for discrediting Giemza-Palmer's opinions.

### b.  Medical Evidence of Record

Incongruity with the medical record is a germane reason for discounting other source testimony. *Lewis*, 236 F.3d at 511. Here, the ALJ concluded the medical evidence of record "shows [Petitioner] has ongoing difficulties with anxiety and depressive symptoms, but it does not document complete mental debility or inability to do basic tasks." (AR 23.) The Court finds the ALJ's conclusion is supported by substantial evidence and is a germane reason for discrediting Giemza-Palmer's opinions.

At step two, the ALJ found Petitioner's mental impairments of depression/bipolar related disorder, anxiety/obsessive-compulsive disorder, and PTSD were all severe impairments. (AR 17-19.) The ALJ concluded Petitioner has moderate limitations resulting from her mental impairments. (AR 19.) The ALJ then discussed Petitioner's functional reports and lay witness statements, recognizing Petitioner had depression symptoms but maintained some capacity for work-related functioning based on her activities of shopping, driving, housework, and completing her functional reports with coherent detail. (AR 20-21, 23.) Again, Petitioner does not contest the ALJ's decision giving little weight to Petitioner's symptom statements and the lay witness statements of Petitioner's mother. The ALJ also discussed the medical record relating to Petitioner's mental limitations, noting her treatment during the period at issue included counseling and effective psychotropic medication management. (AR 23-25.)

**MEMORANDUM DECISION AND ORDER - 10**

Though the ALJ's discussion of the medical record was contained in different portions of the written decision, the ALJ nonetheless provided sufficient explanations and citations to the evidence in the record to enable the Court to reasonably discern the ALJ's path and meaningfully determine that the ALJ's conclusions are indeed supported by substantial evidence. *Brown-Hunter*, 806 F.3d at 49 (reiterating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible). Here, the ALJ cited the same treatment notes of Giemza-Palmer in the portions of his written decision discussing Giemza-Palmer's opinions, the medical record, and Petitioner's mental limitations. (AR 23-25.)

The medical evidence specifically identified in the written decision supports the ALJ's conclusion that Petitioner's mental impairments did not render her completely disabled or unable to perform basic tasks to the extent opined by Giemza-Palmer.[5] Most notably, the treatment notes of Giemza-Palmer reporting normal mental status examination results and stating Petitioner's psychotropic medication regimen provided effective relief of her symptoms without side effects during the period of time at issue. (AR 23-25.)[6] Accordingly, the Court finds this was a germane reason for affording little

_____

[5] Petitioner contends the ALJ mischaracterized the limitations opined by Giemza-Palmer by summarizing her findings as a "complete mental debility or inability to do basic tasks." (Dkt. 20 at 13-14.) That statement was directed at the marked and extreme mental limitations opined by Giemza-Palmer, which the Court finds the ALJ discussed and properly considered. (AR 23.)

[6] Respondent's brief discusses medical records cited in the ALJ's written decision, as well as other portions of the treatment records not cited by the ALJ. (Dkt. 21.) The Court has not relied on any records not specifically cited in the ALJ's written decision in reaching its determination sated herein. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of

**MEMORANDUM DECISION AND ORDER - 11**

weight to Giemza-Palmer's opinions that is supported by substantial evidence.

### c. Treatment Notes

The ALJ did not err in concluding the marked and extreme limitations opined by Giemza-Palmer are not consistent with her own treatment notes. (AR 23.) "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim*, 763 F.3d at 1161 (citing *Molina*, 674 F.3d at 1111–12) (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion)).

The ALJ cited particular treatment notes in support of this conclusion. (AR 23.) Namely, records reporting mental health exam findings from 2018 to 2020 that Petitioner's thought pattern, thought content, insight, judgment, knowledge base and intellectual functioning, and behavior were all "good" and/or "age appropriate." (AR 807, 955, 958, 974, 983, 990, 995.) The neurological exams performed during these visits yielded findings that Petitioner had normal thought, perception, and cognitive function. While Petitioner views the record differently, the Court finds substantial evidence supports the ALJ's conclusion that the opinions of Giemza-Palmer were inconsistent with these treatment notes reflecting Petitioner's mental impairments did not cause marked or

administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

**MEMORANDUM DECISION AND ORDER - 12**

extreme limitations. *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")). This was therefore a germane reason for discounting Giemza-Palmer's opinions.

### d. Check-Box Form

The ALJ's conclusion that the check-box opinion lacks adequate discussion is not supported by substantial evidence. A non-medically acceptable treating source's failure to provide "reasoning or clinical findings" in support of a check-box form opinion is a germane reason for giving the opinion little weight. *Molina*, 674 F.3d at 1111. However, a provider's use of a check-box form, in and of itself, is not a germane reason to assign the opinion little weight, because "there is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these type of forms[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 677, n.4 (9th Cir. 2017); *see also Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.").

Here, although Giemza-Palmer's opinions are contained on check-box forms, she included meaningful explanations for her opinions in the spaces provided on the forms. (AR 809-811, 947-952.) The ALJ therefore erred in rejecting Giemza-Palmer's opinions on this basis. However, this error was harmless. *Batson v. Comm'r of Soc. Sec. Admin.*,

359 F.3d 1190, 1195–97 (9th Cir. 2004) (applying harmless error standard where one of the ALJ's reasons supporting an adverse credibility finding was held invalid).

As explained above, the ALJ gave other germane reasons for rejecting the nurse practitioner's opinion. *Bray*, 554 F.3d at 1227 (finding ALJ's reliance on an invalid reason to discredit claimant was "harmless error" where ALJ had also relied on other reasons that were valid). The error with regard to the check-box form is relatively minor in comparison to the more substantive germane and valid reasons given by the ALJ for discrediting Giemza-Palmer's opinions. *Carmickle*, 533 F.3d at 1163 (inclusion of erroneous reasons to discount claimant's testimony was harmless because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor.'"). Accordingly, the Court finds substantial evidence supports the ALJ's decision to give little weight to Giemza-Palmer's opinions.

### 2.   Nurse Practitioner Peggy Young

Young began treating Petitioner since at least February 2016. On October 17, 2018, Young completed a physical medical source statement opining that Petitioner had certain work-related limitations due to her fibromyalgia and progressive chronic pain syndrome. (AR 777-782.) Namely, Young concluded Petitioner could frequently carry/lift up to ten pounds and occasionally lift up to twenty pounds; could not sit, stand, or walk for more than thirty minutes at a time and must change positions or lay down for an hour before repeating; could sit for up to four hours, sand for up to three hours, and walk for up to one hour during a work day; had some limitations with reaching, handling,

**MEMORANDUM DECISION AND ORDER - 14**

and fingering; was limited in her ability to perform postural activities; and had

environmental limitations with unprotected heights, extreme cold, and extreme heat.

> The ALJ accorded "little weight" to Young's opinion, stating:

> Her descriptions of physical limitations appear to be based on subjective
> reports, rather than objective signs or tests. Further, the treatment records
> do not support fibromyalgia problems as described in the check-box
> questionnaire. This questionnaire opinion is not supported by narrative,
> objective medical evidence or treatment records. She cited a tender 18-point
> exam, but this is not found in the medical evidence or record. Check-off
> reports that do not explain the bases of their conclusions are minimally
> helpful. For these reasons, this opinion merits little weight.

(AR 22) (internal caselaw citations omitted).

> The Court finds the ALJ provided valid germane reasons for discrediting Young's

opinion because it was based on Petitioner's subjective reports, rather than objective

signs or tests, and because it was not supported by objective medical evidence and

treatment records. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did

not err in rejecting opinions based on subjective complaints.); *Lewis*, 236 F.3d at 511-12

("One reason for which an ALJ may discount lay testimony is that it conflicts with

medical evidence."). The ALJ gave little weight to the subjective symptom statements,

which Petitioner does not contest. Further, the ALJ correctly observed that the medical

evidence of record does not contain a tender 18-point exam as noted by Young in the

report. (AR 22, 778-779.) Indeed, the lack of medical evidence needed to establish either

of the diagnostic criteria for fibromyalgia was the basis for the ALJ's determination at

step two that Petitioner did not have a medically determinable impairment of

**MEMORANDUM DECISION AND ORDER - 15**

fibromyalgia or any other physical impairment. (AR 18-19, 23.) Thus, the ALJ did not err in affording little weight to Young's opinion because it was based on the discredited subjective reports, rather than objective signs or tests, and was unsupported by medical evidence or treatment records. These were germane reasons for discrediting Young's opinion that are supported by substantial evidence.

Importantly, Petitioner has not challenged the ALJ's step two determination finding Petitioner had no medically determinable physical impairments related to pain.[7] The ALJ is only required to include limitations and restrictions in the RFC that are attributable to medically determinable impairments. *See e.g.*, *Georgina R. v. Comm'r of Soc. Sec.*, 2021 WL 1531139, at * 5 (W.D. Wash. April 19, 2021); *Dennis G. v. Comm'r of Social Sec.*, 2020 WL 3620100, at *10 (E.D. Wash. Mar. 30, 2020) (citing *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); SSR 96-8p, 1996 WL 374184, at *2 (an ALJ is only required to include in the RFC limitations and restrictions that are "attributable to medically determinable impairments")). Thus, the ALJ did not err by not including any functional limitations in the RFC assessment attributable to fibromyalgia or chronic pain.

However, as with Giemza-Palmer's opinion discussed above, the Court again finds the use of a check-box form was not a valid germane reason for the ALJ to discredit Young's opinion. (AR 22.) "[A]n opinion cannot be rejected merely for being expressed

---

[7] Petitioner argues in her briefing that the ALJ erred in failing to consider her chronic pain syndrome in assessing the weight of Young's opinion and making the RFC determination. (Dkt. 20 at 18-19.) However, Petitioner's argument concerning chronic pain still does not contest the ALJ's step two conclusion that Petitioner had no medically determinable physical impairments related to pain– whether fibromyalgia or chronic pain.

as answers to a check-the-box questionnaire, [but] the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Ford*, 950 F.3d at 1155 (citations and quotations omitted). Here, Young provided explanations for her findings and conclusions on the check-box form.

The check-box form used by Young allows space for the provider to explain the bases for the conclusions stated—which Young did. (AR 777-782.) The form asks the provider to "[i]dentify the particular medical or clinical findings…which support your assessment or any limitations and why the findings support the assessment." (AR 777.) In response, Young explained "dx of fibromyalgia a progressive chronic pain syndrome – pain shoulders, arms, large muscles on legs, lower back pain affected by sitting too long and too much exercise also too hot or too cold – 'weather changes.'" (AR 777.) Young provided similar explanations for each of the functional opinions, stating: "This patient has FM [with] progressive chronic pain syndrome" and "[l]ong standing diagnosis of fibromyalgia with progressive chronic pain syndrome." (AR 782, 779.)

Given Young's explanations of the bases for her findings and opinion, the case cited in the written decision to support the ALJ's conclusion regarding the check-box reports is inapposite. (AR 22) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). In *Crane*, the ALJ "permissibly rejected [the medical opinions] because they were check-off reports that did not contain <u>any</u> explanation of the bases of their conclusions." *Crane*, 76 F.3d at 253 (emphasis added). Here, Young explained the bases for her opinion on the form. For these reasons, the Court finds the check-box form was not a valid reason for

**MEMORANDUM DECISION AND ORDER - 17**

rejecting Young's opinion when there were clearly explanations provided in the report. This error, however, was again harmless. *Batson*, 359 F.3d at 1195–97.

The ALJ gave other valid germane reasons for rejecting Young's opinion. *Bray*, 554 F.3d at 1227. As with Giemza-Palmer's opinion discussed above, the error with regard to the check-box form is relatively minor in comparison to the other more substantive germane and valid reasons given by the ALJ for discrediting Young's opinions which are supported by substantial evidence. *Carmickle*, 533 F.3d at 1163.

Based on the foregoing, the Court finds the ALJ provided valid germane reasons for discrediting Young's opinion which are sufficient to uphold the ALJ's decision. Namely, that the opinion was based on subjective reports and the lack of medical evidence to support the opinion. Accordingly, the Court finds substantial evidence supports the ALJ's decision to give little weight to Young's opinion.

## 2.     RFC Determination

Having found the ALJ properly evaluated the medical opinion evidence and the relevant medical records, the Court finds the ALJ's decision is without legal error and is supported by substantial evidence. The ALJ provided a detailed "summary of the facts and conflicting clinical evidence," explained his interpretation of the record and evidence, and made the requisite findings. *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). That Petitioner views the record differently does not establish reversible error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of

which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Further, the ALJ incorporated limitations into the RFC assessment that were attributable to Petitioner's medically determinable impairments, consistent with the medical evidence in the record. In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. *See Bayliss*, 427 F.3d at 1217 (upholding ALJ's RFC determination because "the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints"); *Batson*, 359 F.3d at 1197 (ALJ not required to incorporate into RFC findings from treating-physician opinions that were "permissibly discounted"). The ALJ was only required to include limitations and restrictions in the RFC assessment that are "attributable to medically determinable impairments." *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2; 20 C.F.R. § 404.1545(a) (discussing the ALJ's assessment of the RFC limitations as based on a claimant's medically determinable impairment(s) and any related symptoms). Because Petitioner's fibromyalgia was found to not be a medically determinable impairment at step two, the ALJ did not err by omitting limitations based on Petitioner's complaints of pain from the RFC.

Further, the ALJ properly considered the evidence of Petitioner's pain. At step two, the ALJ determined fibromyalgia was not a medically determinable impairment, explaining that the evidence in the file does not establish either of the diagnostic criteria. (AR 18-19.) In the RFC assessment, the ALJ accurately described Petitioner's symptom

statements and the lay statements provided by Petitioner's mother. (AR 20-21.) The ALJ then considered the opinion evidence of Young and two state agency physicians, Guillermo Rubio and Robert Vestal, who both concluded Petitioner could perform light work, with some limitations, accounting for fibromyalgia, osteoarthritis. (AR 23.) The ALJ concluded, as he did at step two, that Petitioner had no functional physical limitations related to pain. Substantial evidence supports the ALJ's decision to omit any functional physical limitations from the RFC because there was no medical evidence supporting it, which is required to find an impairment. *See* 20 C.F.R. § 404.1508.

For these reasons, the Court will affirm the decision of the Commissioner and dismiss the Petition for Review.

## ORDER

Based on the foregoing, and the Court being otherwise fully advised in the premises, IT IS HEREBY ORDERED that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the petition for review is **DISMISSED**.

DATED: September 30, 2022

Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**